UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                                   Crim. No. 18-180 (PAM/KMM)

                  Plaintiff,

v.                                                      **MEMORANDUM AND ORDER**

Ryan Isiah Thompson,

                  Defendant.
_____

This matter is before the Court on the parties' objections to the Report and Recommendation ("R&R") of United States Magistrate Judge Katherine M. Menendez dated January 7, 2019 (Docket No. 45). The Court reviews de novo a magistrate judge's decision on dispositive issues. 28 U.S.C. § 636(b)(1); D. Minn. L.R. 72.2(b). Having conducted that review, the Court adopts the R&R in part and declines to adopt it in part.

**BACKGROUND**

The facts of this matter are fully set forth in Magistrate Judge Menendez's thorough R&R and will not be repeated here. In brief, the instant dispute arises out of a traffic stop and preceding investigation into Defendant's drug-trafficking activities. Defendant seeks the suppression of information obtained through search warrants, tracking devices, and statements and evidence uncovered during the traffic stop that resulted in Defendant's arrest. The Government objects to the R&R's conclusion that some of the statements Defendant made during the traffic stop should be suppressed.

The investigation into Defendant's activities began when a "concerned citizen," identified as "ABC," contacted a law enforcement officer alleging that Defendant was

distributing heroin in St. Paul. Many of Defendant's objections stem from his belief that law enforcement did not adequately explain to the warrant-signing judge this individual's motivations for coming forward, noting that even after ABC became a paid informant, the police officers continued to refer to him as a "concerned citizen" rather than an informant. ABC's discussions with law enforcement led to the installation of a tracking device on one of Defendant's cars and a pen register on Defendant's cell phone in early March 2018. When ABC informed the officers in mid-March that Defendant had a new cell phone number and a different vehicle, law enforcement again applied for and received a warrant allowing tracking of the car and cell phone. According to Defendant, the information in the warrants was fatally incomplete, rendering the warrants invalid and all resulting evidence obtained in the investigation fruit of the poisonous tree.

**DISCUSSION**

**A.     Warrants**

Although she characterized the warrant applications as "thin," Magistrate Judge Menendez concluded that the warrants were not lacking probable cause. (R&R at 15.) And the Eighth Circuit Court of Appeals routinely upholds warrant applications where the information provided by an informant is corroborated, even if that corroboration is as to innocent details. See United States v. Tyler, 238 F.3d 1036, 1039 (8th Cir. 2001) ("Even 'the corroboration of minor, innocent details can suffice to establish probable cause.'") (quoting United States v. Ramos, 818 F.2d 1392, 1397 n.7 (8th Cir. 1987)). Indeed, even if the information in the application was insufficient to issue the warrant, "[e]vidence should be suppressed only if the affiant-officer could not have harbored an objectively

2

reasonable belief in the existence of probable cause." United States v. Gibson, 928 F.2d 250, 254 (8th Cir. 1991). The warrants here did not include all the incriminating information the officer had about Defendant, and thus the officer had an objectively reasonable belief that probable cause for the warrants existed.

Defendant argues that referring to ABC as merely a "concerned citizen" improperly bolstered ABC's credibility with the issuing judge, because "it implied [ABC] was disinterested in the events described in the affidavit." United States v. Buchanan, 167 F.3d 1207, 1210 (8th Cir. 1999). The Court disagrees. As Magistrate Judge Menendez found, there was no evidence adduced at the hearing that the officer believed there was a significant difference between the term "concerned citizen" and "confidential informant," or that he used the term "concerned citizen" in an attempt to mislead the issuing judge. (R&R at 19.) But even if referring to ABC as a "concerned citizen" was somehow misleading, there was sufficient information in the affidavit to allow the issuing judge to find probable cause. Moreover, a more fulsome description of ABC's role would not have changed the reliability of the information he provided, or the propriety of law enforcement or the judge relying on that information.

Defendant also takes issue with the R&R's conclusion that the good-faith exception applies even if the warrants were otherwise invalid. According to Defendant, it was unreasonable for the law enforcement officer to rely on ABC's statements, because the officer did not do any independent investigation such as conducting a controlled buy. But Defendant cannot dispute that the officer had more information from ABC than was included in the warrant application, including videos ABC had taken of Defendant with

stacks of money, firearms, and baggies of what appeared to be a controlled substance. Thus, the officer reasonably believed that there was probable cause for the warrants he sought. As the R&R correctly found, none of the exceptions to <u>Leon</u>'s good-faith doctrine are found here: the issuing judge did not "wholly abandon[] [her] judicial role," the application was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," the judge was not misled by any information the officer "knew was false or would have known was false except for his reckless disregard of the truth," and the warrant was not "facially deficient." <u>United States v. Leon</u>, 468 U.S. 897, 923 (1984) (quotation omitted).

Defendant next attacks the R&R's determination that the warrant for tracking the location of his cell phone complied with recent Supreme Court precedent. The application law enforcement used to request Defendant's cell-phone tracking was an old version that did not acknowledge that such a warrant must be based on probable cause, not merely a belief that the information obtained would be relevant to an ongoing criminal investigation. <u>See</u> <u>Carpenter v. United States</u>, 138 S. Ct. 2206, 2221 (2018) (finding that probable cause is required for law enforcement to secure a warrant for cell-phone tracking data).

But as the R&R points out, although the application referenced an outdated standard, it is clear that the issuing judge found probable cause for the cell-phone warrant. Defendant contends that this finding is itself insufficient because the issuing judge merely found probable cause "to believe that the information likely to be obtained by [the cell-phone tracking] is relevant to an ongoing criminal investigation into possible violation(s)." (Gov't Ex. 22.) According to Defendant, a warrant can issue only if there is "probable

cause to believe that evidence of criminal activity will be found in a particular place." (Def.'s Obj. at 25.) But this standard cannot apply to cell-phone tracking and other cell-phone data. The very purpose of tracking data is to monitor the movements of an individual suspected of criminal activity, in order to pinpoint the particular place where the individual is carrying out the suspected activity. Moreover, the judge's use of "possible" violations does not mean that law enforcement had not established probable cause to believe that Defendant was engaged in criminal activity. The totality of the circumstances demonstrates that law enforcement established that such probable cause existed.

Because the Court agrees with the R&R's determination that the warrants at issue were valid, Defendant's argument that the traffic stop was fruit of the poisonous tree is without merit. Defendant's contention that his arrest was without probable cause similarly fails. Indeed, law enforcement had ample probable cause to arrest Defendant even before the traffic stop because of the information obtained during the course of the investigation, all of which corroborated the details ABC provided. Defendant's fruit-of-the-poisonous-tree argument is without merit.

**B.    Defendant's Statements**

Both parties take issue with the R&R's conclusions regarding the suppression of statements made during the traffic stop. The R&R determined that some, but not all, of the statements Defendant made to law enforcement must be suppressed because law enforcement failed to inform Defendant of his rights under Miranda v. Arizona, 384 U.S. 436, 444 (1966). Defendant asks the Court to determine that all of his statements must be suppressed. The Government contends that statements Defendant made during the first

5

few minutes of the traffic stop and statements he made to police regarding probable cause for a canine search and that his girlfriend had a gun license should not be suppressed.[1]

The R&R found that Defendant's responses to three questions regarding whether there was a gun in the car and where that gun was located were admissible under the public-safety exception, but that the remainder of the statements Defendant made during the traffic stop were subject to suppression. (R&R at 43.) Defendant contends that the R&R erred by admitting Defendant's three responses under the public-safety exception. Defendant argues that he was in custody and therefore <u>Miranda</u> warnings were required. But the public-safety exception renders <u>Miranda</u> inapplicable to even custodial interrogations, because the "need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." <u>New York v. Quarles</u>, 467 U.S. 649, 657 (1984).

As the R&R determined, Defendant's responses to the officer's questions about whether there was anything illegal in the car, whether there was a gun in the car, and where the gun could be found are admissible under the public-safety exception. (R&R at 43.) Defendant's objections are therefore overruled.

The Government argues that the exclusion of all other statements Defendant made during the stop is unwarranted. In particular, the Government contends that Defendant's responses to the officer's questions during the first few minutes of the stop, before the

---

[1] Defendant also contends that his statements should be suppressed because they are fruit of the poisonous tree. Having rejected that argument above, the Court will not further address it here.

officer asked Defendant to step out of the vehicle, cannot be excluded under Miranda, and that the later Defendant-initiated discussion with officers about probable cause, which culminated in Defendant informing the officers that his passenger/girlfriend had a gun license, was a voluntary statement and was therefore not subject to suppression under Miranda.

"Miranda . . . requires that a warning as to the availability of the privilege against self-incrimination and to the assistance of counsel be issued prior to questioning whenever a suspect is (1) interrogated (2) while in custody." United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990) (emphasis omitted). To resolve the Government's objections, the Court must determine whether Defendant was in custody during the initial few minutes of the traffic stop. The Court must also determine whether his comments regarding probable cause, which led to his statement that his girlfriend had her gun license, were in response to interrogation.

"Custody occurs either upon formal arrest or under any other circumstances where the suspect is deprived of his freedom of action in any significant way." Id. (emphases omitted). But not all interactions with law enforcement rise to the level of custody; only if the individual reasonably believes that his "freedom of action ha[s] been curtailed to a 'degree associated with formal arrest'" is he in custody for purposes of Miranda. Id. (quoting California v. Beheler, 462 U.S. 1121, 1125 (1983)).

Questioning an individual after a traffic stop does not typically implicate Miranda. Berkemer v. McCarty, 468 U.S. 420, 437 (1984). The stopped individual cannot reasonably believe that he is in custody. Rather, an individual stopped for a traffic violation

expects "that he will be obliged to spend a short period of time answering questions and waiting while the officer checks his license and registration, that he may then be given a citation, but that in the end he most likely will be allowed to continue on his way." Id. In addition, the individual is not "completely at the mercy of the police." Id. at 438. "[T]he atmosphere surrounding an ordinary traffic stop is substantially less 'police dominated' than that surrounding the kinds of interrogation at issue in Miranda itself." Id. at 438-39. Thus, "the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." Id. at 439.

The questions the officer asked Defendant and his girlfriend in the initial minutes of the traffic stop, before the officer asked Defendant to step out of the car, fall within the Berkemer's framework. The officer questioned Defendant about innocuous subjects, such as where Defendant had been and where he was going. The Court disagrees with the R&R's conclusion that these statements should be suppressed.

The Government also argues that statements Defendant made that were not in response to an officer's questions should not be suppressed. After Defendant was out of his car, he engaged the officers in a conversation about probable cause. He first told the officers that "this is an illegal search and seizure man." (Gov't Ex. 8 at 14.) He and the officers then talked about probable cause, reasonable suspicion, and canine sniffs. One of the officers stated that, "[I]f there's nothin' in the car for you to worry about, then it's all good and then you'll be on your way in five seconds." (Id. at 16.) Immediately thereafter,

8

Defendant stated, "Well, this is what I was gonna say. My girls have their guns license." (Id.) The officer asked, "What?" and Defendant responded, "She has a gun license."

"A voluntary statement made by a suspect, not in response to interrogation, is not barred by the Fifth Amendment and is admissible with or without the giving of Miranda warnings." United States v. Hatten, 68 F.3d 257, 262 (8th Cir. 1995) (citing Rhode Island v. Innis, 446 U.S. 291, 299 (1980)); see also United States v. Hayes, 120 F.3d 739, 744 (8th Cir. 1997) ("Miranda does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers.") (quotation omitted). Interrogation is either "express questioning" or "words or actions . . . that the police should know are reasonably likely to elicit an incriminating response." Innis, 446 U.S. at 301.

Defendant made the statements quoted above voluntarily, and not in response to any questioning from law enforcement. Thus, these statements were not a product of interrogation, were not subject to Miranda, and are admissible. To the extent Defendant made other statements during the traffic stop not specifically discussed above or in the R&R, the Court agrees with the R&R that Miranda applies and those statements are suppressed.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that**:

1. The R&R (Docket No. 45) is **ADOPTED in part**;
2. Defendant's Motion to Suppress (Docket No. 25) is **DENIED**;

3. Defendant's Motion to Suppress Statements (Docket No. 24) is **GRANTED in part** and **DENIED in part**, as set forth above;

4. Aside from the statements discussed above, Defendant's statements to law enforcement during the traffic stop on May 6, 2018, are **SUPPRESSED**.

Dated:  March 5, 2018

     *s/Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge